## Eshelman and Wife *versus* Shuman's Adm'rs.

An assignment by an insolvent debtor in 1827, does not pass to his trustee a chose in action, or distributive share of his wife, arising out of her father's estate, unless it be specially included in the assignment. The case of Shuman *v.* Reigart, 7 W. & S. 168, explained.

The practice of suing a recognizance in the name of the president of the Orphans' Court, who is not a corporation, and not the successor of the judge to whom the recognizance was acknowledged *nominatum*, maintained on the maxim of *communis error facit jus;* but a suit in the name of the president judge, for the use of the assignee of the husband, for the amount of the share of the wife claimed in this suit, is no bar to a recovery in the name of the same officer, for the use of the wife, and her husband, as her trustee.

ERROR to the District Court, *Lancaster.*

This was an action in the name of LEWIS, president of the Orphans' Court of Lancaster county, for the use of Christian Eshelman and Elizabeth his wife *vs.* the administrators of Shuman, to recover the wife's share, under a recognizance executed by the administrator of her father's estate, conditioned for the payment of the interest to the widow, during her life, and the principal sum, viz: one-third part of the purchase money, to the heirs after her death. Christian Stoner, the father, died intestate, and in 1811, in pursuance of a petition to the Orphans' Court of Lancaster county, certain real estate was valued, and the heirs having refused to take it at the valuation, the property was sold; the interest on the third part of the purchase money, exceeding $10,000, was to be paid to the widow during life, and after her death, the principal sum to the heirs. Shuman, the administrator, executed a recognizance conditioned for its payment. The recognizance entered into in January, 1812.

In 1827, Eshelman, one of the plaintiffs, petitioned the Court of Common Pleas of Lancaster county for the benefit of the insolvent laws; and in September, 1827, he executed an assignment, as follows: "Know all men by these presents, that I, Christian Eshelman, the within named petitioner, do hereby assign and transfer unto Benjamin Herr, one of my creditors, in pursuance of the directions of the act of assembly, *all my estate, real, personal and mixed,* in trust for himself and my other creditors. In witness," &c. Dated the 19th September, 1827.

I.—J2*

The widow of Christian Stoner died on the 18th October, 1841. The main question was, whether the assignment passed the wife's distributive share, under the recógnizance, payable after the death of her mother.

The defendants plead payment, and payment with leave, &c., and also filed a special plea in bar, to the effect that a former suit for the share of the wife, claimed in this suit, had been brought in 1841, after the death of the widow, in the name of Benjamin Chámpneys, Esq., then president Judge of the Orphans' Court, for the use of Benjamin Herr, trustee of Christian Eshelman, the husband, in which case a verdict and judgment was rendered against Herr, the trustee.

His Honor, Judge DURKEE, holding a special court, stated, in his opinion, that in two suits, brought in the District court of this county, *on the same recognizance* on which this suit is founded, it was decided by the court below, that the interest of the wife in her father's estate passed and became vested in the trustees of her husband, under their assignments on taking the benefit of the insolvent laws, and that these decisions were affirmed by the Supreme Court; he referring to Shuman *vs.* Reigart, 7 *W.* & *S.* 168, and another suit on the same recognizance, in favor of Reigart as assignee of Rakes, who was married to Frances, another daughter of Christian Stoner. And he charged the jury that the right of Elizabeth Eshelman to the money claimed passed by her husband's assignment to Herr. He had, therefore, a right to bring suit for it, and having done so, and a judgment rendered against him, he could not maintain a second suit; and that Eshelman and wife had no better right to sue than he had. He directed the jury to render a verdict for the defendants.

It was assigned for error:

That the court erred in instructing the jury that the interest of Elizabeth Eshelman passed, by the assignment of her husband, under the insolvent laws, for the benefit of creditors.

The case was argued by *Geo. W. McElroy* and *Reah Frazer* for plaintiffs in error.—That the husband has no property in his wife's choses in action; that he has only a naked *power*, which he is not bound to exercise in favor of his creditors, and that it is not liable to attachment for his debts, 2 *Watts* 90, Dennison *vs.* Nigh; 5 *Barr* 262. That the choses of the wife do not pass by his assignment under the insolvent laws, unless specially assigned, 10 *Barr*, Shay *vs.* Sessaman, and do. 373. The case of Shuman *vs.* Reigart included two assignments, each by separate persons, and contained in the same paper book. One assignment set out the wife's share—the other did not. The court decided in general

terms, that the share passed by the assignment, and, as is stated in Shay *vs.* Sessaman, 10 *Barr*, on the ground that the shares were *specially* assigned. In Richwine *vs.* Hein, 1 *Pa. Rep.* 373, the property of the wife was set forth in the assignment and in the inventory.

*A. L. Hayes* and *E. C. Reigart* for the administrators.—That the acts of 1729–'30, and of 1814, have received a settled construction, that the choses in action of the insolvent's wife passes to his trustee, and that the verdict and judgment, in the suit by Herr as trustee of Christian Eshelman, was conclusive, 6 *Bin.* 191; 1 *Pa. Rep.* 373; 4 *Rawle* 468, *Siter's Case;* 7 *W. & S.* 168; 1 *Peere Wms.* 249, 458; 3 *do.* 132.

The opinion of the court was delivered by

GIBSON, C. J.—It has not been contended that a husband has a distinct interest in his wife's choses in action, but it is argued, on the authority of Shuman *vs.* Reigart, that the act of 1814, which transfers the property of an insolvent debtor without an act done by him, is equivalent to an assignment by him of every thing over which he had a power. It was ruled in that case, that the wife's distributive share of the price of her father's land, secured by recognizance to pay at her mother's death, passed by her husband's assignment under the insolvent law. It was said that the husband's property would have passed without it; but it was not said, nor was it intended to be intimated, though it might seem otherwise, that his wife's property in action did. It was supposed that the husband's actual assignment embraced not only his property in general, but the wife's interest in the recognizance expressly; and had that been so, the case would have been, as it was thought to be, the same as Richwine *vs.* Hein, on the principle of which it was supposed to be ruled. But the fact was not entirely so; and the misconception happened in this wise: Two causes between the same parties, founded on distinct assignments, thought to be alike in the minutest particulars, and executed by two insolvent husbands of sisters, entitled respectively under the same recognizance, were consolidated and argued together; but in reality the one assignment embraced the wife's interest, and the other did not. The difference was not observed at the argument, or, if observed, was not pressed; and the judge who drew the opinion happened to take the case from the record which contained the specific assignment, but the reporter happened to make up the case from the other. The paper books have been procured, and show that such was the fact. Though it was said that the Legislature had dispensed with the assignment of the husband, it was not said the wife's chose passed by the statute. On the contrary, it was said to have passed on the principle laid down by Mr. Justice

SMITH, in Richwine *vs.* Hein, that the statute rather strengthened than weakened the actual assignment, which is consequently good for the excess without regard to the enactment. It is admitted that it was not expressly said in Shuman *vs.* Reigart that the wife's chose in action passed by the husband's assignment alone; but neither was it said that it passed by the statute. It was not said in the report that it was included in his assignment; and the truth is, the opinion was deficiently expressed. Had the last sentence of the first paragraph been introduced by a reference to the supposed fact that both assignments included the wife's interest, the conclusion would have been legitimate. But little attention was paid to that part of the case, as the question was thought to depend on the extent of the husband's power to transfer his wife's *reversionary* interest. Had the reporter made up the case from the other paper book, there would have been no apparent discrepance between it and Richwine *vs.* Hein, or Shay *vs.* Sessaman, in the latter of which Shuman *vs.* Reigart was referred to as an authority for the principle that the husband's power of reduction to possession does not pass by the statute. The assignment before us did not include the wife's interest in the recognizance, and consequently did not pass it; so that she and her insolvent husband, as her trustee, are the only persons who have at any time been entitled to sue for it.

The defence taken on the point of former recovery is no better founded. Certain it is that the former suit was brought, like the present, nominally by the president of the Orphans' Court; but the assignees were the actual plaintiffs. Except for the maxim, *communis error*, neither that suit, nor the present, could be maintained by an officer who is not a corporation, and who cannot be the successor of a person to whom the recognizance was acknowledged *nominatum*, even if the original cognizee could have maintained it. The form of the recognizance was a bungling contrivance to avoid the trouble of acknowledging a separate recognizance to each child, which the Orphans' Court ought not to have adopted; but though it would now be mischievous to doubt its validity, it would be as much so to let it, for the sake of technical congruity, stand in the way of subtantial justice.

Judgment reversed, and *venire de novo* awarded.